LANGSTON & CRANE *vs.* ANDERSON, sheriff, *et al.*

| 69 | 65 |
|----|----|
| 102 | 824 |
| 69 | 65 |
| 108 | 222 |

1. The facts of the present case are similar to those when the case was here before (*Richardson vs. Langston & Crane*, February term, 1882), and the opinion of the majority of the court in that case governs this.

(*a.*) Where an affidavit to foreclose a laborer's lien stated that demand for payment had been made, and a counter-affidavit filed by a contestant for a fund raised did not deny demand, there was no issue on that point which required proof.

2. Laborers liens yield to *bona fide* purchasers without notice before they are reduced to execution and levied; but take precedence of all other liens, save such as are specially excepted by the Code; they take precedence of mortgages, though the holders thereof may be *bona fide* and without notice.

November 14, 1882.

Liens. Mortgages. Before Judge STEWART. Newton Superior Court. March Term, 1882.

Langston & Crane foreclosed a chattel mortgage against Elliott on a stock of goods in Newton county. The property was sold and the fund brought into court for distribution. Richardson and others foreclosed laborers liens against Elliott and claimed the fund. Their affidavits to foreclose these liens were substantially similar, and each

alleged, in effect, that Elliott was indebted to the depo-nent a stated amount "for services rendered to said Elliott in his store as clerk, laborer and general service in said store," between certain named dates; that the contract of service was completed; that subsequently a demand for payment had been made and refused. On a former trial of the case the *fi. fas.* founded on these affidavits were quashed on motion, and the judgment was reversed by the Supreme Court. (See *Richardson vs. Langston & Crane,* February term, 1882.) Langston & Crane then traversed the affidavits.

On the trial, the testimony on behalf of the claimants of the liens was to the effect that they had clerked for Elliott, and in such capacity had sold and handled goods, cleaned out the store, loaded wagons, and performed "general service." One witness testified that he had known the clerks to chop some wood and do a small amount of work in Elliott's garden. There was some conflicting evidence on the subject of the duties of a clerk, not material to be stated here. The case was submitted to the judge without a jury. He ordered the fund to be paid to the claimants of the liens to the exclusion of Langston & Crane, and the latter excepted.

CLARK & PACE; McKAY & ABBOTT, for plaintiffs in error.

SIMMS & SIMMS, for defendants.

CRAWFORD, Justice.

1. The law governing this case, as to the rights of the defendants in error as laborers, was decided when it was before us at the last term. The affidavits set forth the grounds upon which the plaintiffs in *fi. fa.* below relied to establish their liens on the fund in the sheriff's hands. Upon the trial of the traverse made by the counter affi-davit, the testimony did not materially vary the facts upon which this court made its ruling on the rights of the

parties, and a majority of the bench still adhering to that judgment, settles the question in favor of the defendants in error. My own mind has undergone no change, and whilst I admit that the defendants in error are equally entitled to their pay with such as are classified laborers, still, they do not, in my opinion, fall within such classification, and were not so considered by the legislature.

The judgment of the court below is further excepted to as erroneous, because on the trial there was no proof of a demand by the defendants in error on the debtor.

The affidavits of these lien creditors set out the fact that they had made such demand, and the counter affidavit did not traverse or deny it. Such being the fact there was no issue formed, none to be tried, and no further proof necessary. 58 *Ga.*, 411.

The counter-affidavit contested the existence of the liens, and denied that, under the facts alleged, any lien existed in law by which the said parties were entitled to the said fund over the contestants.

2. Under this general exception it is insisted further by counsel for plaintiffs in error, that these laborers liens cannot be enforced against *bona fide* mortgage creditors any more than they could against *bona fide* purchasers without notice.

That they cannot be enforced against *bona fide* purchasers, is especially declared in §1976 of the Code. But in §1974 it is provided that laborers shall have a general lien upon the property of their employers superior to all other liens, except for taxes and such others as are declared by law to be superior to them ; and mortgages are not so declared.

Whilst this particular question has not been before this court since the act of 1873, fixing the liens of laborers, it was before it under the constitution of 1868, and the act of 1869 providing for these liens, and the ruling of the court will be found in the case of *Stonewall Jackson Building and Loan Association vs. McGruder*, 43 *Ga.*, 9. Under the act of 1869 laborers liens did not have the priority

which is given them under the act of 1873, and yet it was held in the case referred to that as to dignity they were superior to judgments, mortgages, etc., which had to yield to the laborer and mechanic, even though such judgments and mortgages might be of older date.

If, then, such priority was given to these liens under the act of 1869, there can be no question but that under the act of 1873 they are of higher dignity than mortgages, even though they may have been made to *bona fide* creditors.

Judgment affirmed.