ALLRED *v.* HAILE *et al.*

1. The general laborer's lien cannot be foreclosed upon realty by affidavit, but only by action after properly recording the claim of lien.

2. The general laborer's lien upon personalty may be foreclosed by affidavit under §1991 of the code, and in so doing, it is not necessary to specify any particular items or articles of property.

3. The general laborer's lien on personalty takes precedence over ordinary mortgages, even those created prior to the contract for labor, unless they also antedate the statute providing for laborer's liens.

March 10, 1890.

Money rule. Liens. Laborers. Mortgages. Actions. Practice. Before Judge BOWER. Decatur superior court. May adjourned term, 1889.

Property real and personal of Albert Haile was sold by the sheriff, and the fund arising from the sale was claimed by W. A. Allred, J. G. Poore and J. Steininger & Co. The two latter held mortgages, covering the property sold, given by Haile, and of older date than the contract of labor upon which Allred foreclosed his general laborer's lien against Haile. This laborer's lien was foreclosed and levied upon the property before it was sold by the sheriff. It was a general claim of lien for labor specified in the affidavit for foreclosure, upon all the property of Haile, and a special claim of lien as a laborer upon one hundred sticks of round timber, which timber was not part of the property the sale of which

raised the fund. The mortgage creditors demurred to the affidavit of foreclosure of the lien, on the ground that it was insufficient in law because it did not set out the specific realty and personalty upon which the lien was claimed. The affidavit was made December 26, 1887. It set forth that the contract of labor was made between Allred and Haile on January 10, 1887; what was the labor contracted for, and upon what terms; that it had been faithfully performed and was completed on December 22, 1887; how much was due to Allred upon it, which, after maturity, was demanded by Allred of Haile and payment refused; and that the affidavit was made within twelve months from the time the sum mentioned became due, for the purpose of foreclosing Allred's special lien upon said timber, and his general lien upon all the property of Haile in Decatur county. Allred offered to amend his affidavit by setting out the specific property of Haile upon which he sought to enforce his general lien. This the court refused to permit, but sustained the demurrer, and ordered the foreclosure to be overruled and stricken except as to the 100 sticks of timber. Allred excepted, both to the refusal to allow the amendment and to the sustaining of the demurrer.

TOWNSEND & HARRELL, by O. G. GURLEY, for plaintiff.

DONALSON & HAWES, D. A. RUSSELL and M. O'NEAL, for defendants.

BLECKLEY, Chief Justice.

1. Whilst the general lien of laborers rested on the act of 1869, a summary foreclosure in the method applicable to steamboat liens could be had, it would seem, as to both realty and personalty. *Stonewall, etc. Ass'n* v. *McGruder*, 43 *Ga.* 9; *Tarver* v. *Fleming*, 53 *Ga.* 297. But this was changed as to realty by the act of 1873. According to that act (Code, §1990),

liens on real property, not mortgages and as to which some other mode is not prescribed, are to be foreclosed by suit brought within twelve months. This provision has been construed in *Snow* v. *Council*, 65 *Ga*. 123, and *Love* v. *Cox*, 68 *Ga*. 269. These cases hold not only that a summary enforcement of the lien by mere affidavit, etc. cannot be had, but also that, in order for the lien to exist on realty in a way to be enforced by suit, it must be recorded substantially as required by §1980 of the code. Inasmuch as there was no evidence before the court in the present case of the existence of any lien in behalf of the laborer, except the affidavit of foreclosure and the *fi. fa.* issued thereon, the laborer could not participate in any distribution of the proceeds of real property with which the court was dealing.

2. But it seems that the fund was derived in part from personalty sold under the mortgages, and as to such part we think the foreclosure was sufficient. The method of foreclosure was that prescribed in §1991 of the code, and the lien being general and applying to all the personal property of the debtor, there was no necessity for pointing out or specifying in the affidavit or the *fi. fa.* any particular property. It is only in the foreclosure of special liens that such particularity is needed or appropriate. Although by the act of 1887 (pamphlet p. 59) the affidavit was amendable, it in fact needed no amendment, but was good and sufficient as it stood. *Moody* v. *Travis*, 76 *Ga*. 832 ; *Dixon* v. *Williams*, 82 *Ga*. 105. The latter case holds also that the *fi. fa.* was not vitiated as one against personal property because it improperly embraced a direction to seize lands and tenements as well as goods and chattels. It holds moreover in effect that adverse claimants of the money would have no right to have the foreclosure " overruled and

stricken," even though it were legally defective.
Their only right would be to have the defect treated
as a good reason for not awarding the money to the
laborer in opposition to their claim.

3. After overruling and striking the foreclosure,
there was nothing before the court to compete with
the mortgages, the money having been produced by
property real and personal, not embracing the 100
sticks of timber as to which the foreclosure was held
good. But the final order passed recites that the
mortgages were older than the contract of labor, and
that they were sufficient in amount to absorb the
whole fund. It was argued before us that this fact
would cure any error the court may have committed
in pronouncing the foreclosure as to the general lien
on personalty insufficient. But we think otherwise.
The code, §1974, declares: "Laborers shall have a
general lien upon the property of their employers,
liable to levy and sale, for their labor, which is hereby
declared to be superior to all other liens, except liens
for taxes, the special liens of landlords on yearly
crops, and such other liens as are declared by law to
be superior to them." Mortgages are nowhere de-
clared by law to be superior, and whether older or
younger than the contract for labor makes no differ-
ence, provided they were not already in existence
when the statute giving this lien to laborers was passed.
The question seems virtually decided by *Stonewall,
etc. Ass'n v. McGruder*, 43 *Ga.* 9, and *Langston v. An-
derson*, 69 *Ga.* 65. In the former of these cases McCay,
J., said, speaking of the act of 1869: "We do not
care to discuss the policy of this law, though we think
it founded in good sense and based on a wise public
policy. It is intended to secure to a large class of
poor people, dependent for subsistence upon the safe
and speedy collection of their wages, a speedy mode
of enforcing their just claims. It is intended also to

give to these dependent people a preference to ordinary debts. And this, as we think, is also a wise public policy. These claims are generally small; they belong for the most part to persons who look solely to their daily wages for immediate subsistence, and if they lose that they are in want, and in danger of becoming a *public charge.* It is only in cases of insolvency that this preference can practically interfere with other debts, and the laborer very properly, in our judgment, is thought by the legislature to have the highest claim upon the assets of an insolvent debtor." We quite concur in these views and have no doubt that the true construction of the act of 1873, as well as that of 1869, requires us to grade the general lien of laborers higher than the lien of ordinary mortgages, without respect to their comparative dates. Liens of the same class and character rank by their dates. But liens which exist by virtue of the nature and character of the indebtedness, and which the statute recognizes and favors for the advancement of public policy, do not lose their priority by reason of being younger than others of a different kind.

We are of opinion that in this case the proceeds of the personalty before the court should have been applied to the laborer's lien in preference to the mortgages. The court erred in overruling and striking the foreclosure so far as the personalty was concerned.

*Judgment reversed.*