NATHAN W. RUGGLES *v.* GEORGE B. WALKER.

*Lien of Manufacturers.*

The manufacturer of starch is entitled to a lien on the same for the price of manufacturing, notwithstanding it was manufactured under a special agree-ment providing for the payment of such price in advance.

But this lien is purely a personal privilege and cannot be sold or transferred. It amounts only to a right of detaining the property until the price of man-ufacture is paid, and the retention of the possession of the property, or a portion of it, is essential to its continuance. ·

The plaintiff's declaration contained counts in trespass and trover for taking and converting four tons of starch.    Plea not guilty, and trial by jury at the December term, 1859, POLAND, J., presiding.

The plaintiff gave evidence tending to prove the following facts :  In March, 1859, Daniel Whipple owned a starch factory in Lyndon, and that the defendant owned a quantity of potatoes in said factory.    Whipple had failed and all his property had been attached, and he was desirous to make an arrangement so that he could have the avails of his personal labor for his own use.    Accordingly he made a contract with the defendant to manufacture his potatoes into starch, for which the defendant was to pay him ten dollars per ton in advance.

Whipple commenced working the potatoes, and when he had

finished three or four tons and put the same into casks and had several tons finished except putting the starch into casks, he applied to the defendant to pay him for what he had finished, and told the defendant he feared he would be trusteed and he should lose his earnings.   This was on Saturday, April 3.   The defendant said he could not pay him for he was going to Boston, and on the next Monday he did go to Boston.

On the following Thursday, Whipple applied to the plaintiff to advance him the amount of his lien on the starch, and the plaintiff then let Whipple have one hundred dollars.   At the same time Whipple delivered to the plaintiff eight casks of the starch, being about two tons, and on the following Monday, Whipple having finished the starch, the plaintiff paid him the balance due him for manufacturing the starch, making in all the sum of one hundred and sixty-seven dollars and eighty-one cents, which was conceded to be the amount due for manufacturing the starch.   At this time Whipple delivered to the plaintiff four more casks of starch to hold as security for the payment of the price of manufacturing.   The whole of these twelve casks of starch were moved by the plaintiff to a barn a few rods from the factory and marked with the plaintiff's name.   The plaintiff notified the defendant that he had purchased Whipple's claim on the starch, and that he could have it by paying what he had paid Whipple on the starch.   It was conceded that the twelve casks contained about three tons of starch worth about sixty dollars per ton.   It was conceded that on the day that the plaintiff took the last four casks of starch as above stated, the defendant took away all the starch from the factory, and also the twelve casks so delivered to the plaintiff without paying the price for manufacturing.

The defendant's evidence tended to contradict the plaintiff's in several particulars, but is not material to be stated in order to present the legal questions raised on the trial.

The defendant's counsel claimed and requested the court to charge the jury —

1st, That under the contract between Whipple and the defendant, Whipple had no valid lien on the starch for the price of manufacturing the same.

2d, That if he had, he could not transfer the same to the

plaintiff, so as to enable him rightfully to hold the starch against the defendant.

. 3d, The plaintiff could only recover for the lien on the three tons of starch in his possession, at the rate of ten dollars per ton, and not for the price of manufacturing the whole.

But the court declined so to charge the jury, but did charge them that Whipple had a lien on the starch for the price of manufacturing ; that he could transfer the same to the plaintiff with a portion of the starch, so as to give the plaintiff a lien upon the same, and that if the defendant had notice of the transfer to the plaintiff and took away the starch without paying or offering to pay the price, the plaintiff would be entitled to recover the whole price of manufacturing.

The defendant excepted to the refusal to charge as requested, and to so much of the charge as is stated above.

*T. Bartlett,* for the defendants.

*E. A. Cahoon,* for the plaintiff.

KELLOGG, J.    The first question in this case is, whether Whipple, the plaintiff's assignor, had any lien on the property which is the subject of the action, for the price of manufacturing it ; and the second, whether if he had a lien, it was of such a character as to enable him to transfer it with the property by assignment to the plaintiff, so that the plaintiff could rightfully hold the property against the defendant.   It is conceded that the general property in the starch manufactured by Whipple was in the defendant.

I.   A lien is a right to retain in one's possession another's property until some demand due to the person retaining has been satisfied.   *Hammond* v. *Barclay*, 2 East 235.   It is a settled principle that where a party has, in the way of his trade or occupation, bestowed his money, labor, or skill upon a chattel, in the alteration and improvement of its properties, or for the purpose of imparting an additional value to it, he has a lien upon it for a fair and reasonable remuneration, or for the contract price, if the price has been fixed by agreement ; and this, though

the chattel be delivered to him in different parcels, and at different times, if the work to be done under the agreement be entire. *Chase* v. *Westmore*, 5 Maule and S. 180. This is the ordinary lien of manufacturers, workmen, and artificers. Whipple was therefore entitled to this lien for the starch manufactured by him for the defendant; and although the contract called for the payment of the price of manufacturing the starch in advance, yet we think that the neglect or refusal of the defendant to make such payment should not affect the right of lien. The mere existence of a special agreement will not, of itself, exclude that right except in cases where the terms of the agreement are inconsistent with it. In *McFarland* v. *Wheeler*, 26 Wend. 467, it was expressed as the opinion of the court that when goods or other articles subject to a particular lien are delivered in part, those retained may be held to secure the payment for all the labor, skill, or expense laid out upon the whole under one and the same contract between the same parties, thus constituting one debt; and the case of *Blake* v. *Nicholson*, 3 Maule and S. 168, is alike in principle.

II. The more important question is, whether Whipple's lien was of such a character as would enable him to transfer it with the property by assignment to the plaintiff. The rule, as generally stated by text writers, is that the right of lien is a personal right which cannot be parted with, and that a person who has a lien can not sell his right to another, nor can he transfer the property over which the lien extends, without losing his right, unless the property has been pledged to secure the payment of money advanced, with an express or implied power of sale. 2 Kent's Comm., 642; Addison on Contracts, 1155. It is said by BULLER, J., in *Lickbarrow* v. *Mason*, 6 East 27, *in notis*, that he who has a lien only on goods has no right to sell or dispose of them, but only to retain them until the original price be paid; and the same profound jurist says, in *Daubigny* v. *Duval*, 5 D. & E. 604, that "a lien is a personal right, and can not be transferred to another." An innkeeper who has a lien on the horse of his guest for his keeping has no right to sell the horse except by the custom of London. *Jones* v. *Pearle*, 1 Str. 556; *The case of an Hostler*, Yelv. 67. In *Holly* v. *Huggeford*, 8 Pick.

73, the lien of a factor was held to be a personal privilege which could not be set up by any other person in defence of an action by the principal. The case of *Doane* v. *Russell*, 3 Gray 382, fully recognizes the rule that the right of lien is a personal right to detain in contra-distinction to an interest in the property, and that if a party parts with the article by a pledge, sale or otherwise, he loses his lien. In that case, the question was whether the defendant who held a mechanic's lien on a wagon for the payment of his work and materials, had a right, upon notice, and in case the bill was not paid in a reasonable time, to sell the wagon to enforce the lien; and it was held that he had no such right, and that a party having a lien only, without a power of sale superadded by agreement, can not lawfully sell the chattel for his reimbursement. SHAW, Ch. J., in his opinion in the case, distinguishes between a lien for work and materials, as given by what was anciently called the custom of the realm, or now the general law, and an express pawn or pledge of goods by the owner as collateral security for a loan of money, and says that " in the latter case, it is now held that when the debt has become due, and remains unpaid, the creditor, after a reasonable time, may sell the pledge; but otherwise when there is a mere lien, as in the case of mechanics, innholders, and others by custom." The distinction is this, that a lien, when given by law, is merely a right to retain or keep possession of property until payment; but a pledge of property by way of security for a debt is a lien with a power of sale superadded. In *Lovett* v. *Brown*, 40 N. H. 511, it is held that a mechanic's or manufacturer's lien is neither a *jus ad rem*, nor a *jus in re*, but a simple right of retainer, personal to the party in whom it exists, and not assignable or attachable as personal property, or a chose in action, of the person entitled to it. The lien in such cases is a mere passive lien or right of retainer, and, although the retention of the property may be attended with expense, and may be of no benefit to either party, these considerations will not change the nature of the lien or the rights conferred by it. It is of the same nature as the lien of an attorney or solicitor on papers for his costs, which is a mere personal right, and one that can not be actively enforced, as the papers can not be sold or transferred,

Ruggles *v.* Walker.

but can only be held as a security. *Bozon* v. *Bolland*, 4 Myl. & Cr. 354, (18 Eng. Ch., S. C.) Property held by a party in right of a lien can not form the subject matter of a sale by, or be taken on execution against, the lien holder. *Legg* v. *Evans*, 6 M. & W. 36; *Holly* v. *Huggeford, ubi supra*; *Kittrédge* v. *Sumner*, 11 Pick. 50.

We regard it as well established by the authorities referred to that Whipple's right of lien was, while the property remained in his possession, a personal privilege which he could not sell or transfer except with the consent of the defendant, who was the general owner of the property; that possession was essential not only to the creation, but also to the continuance, of the lien: and that when Whipple parted with his dominion over the property, and suffered its locality to be changed, so as to put it out of his power to surrender it on demand to the general owner, on payment or tender of the price of manufacturing it, his right of lien was determined and forfeited. The transfer by Whipple of his right of lien to the plaintiff was consequently inoperative, and passed no right or interest in the property to the plaintiff. A different view of the law of the case having been taken by the county court in the instructions given to the jury, the judgment of that court in favor of the plaintiff is reversed, and a new trial granted.