## SHEEKS-STEPHENS STORE COMPANY *v.* RICHARDSON.

### Opinion delivered July 8, 1905.

1. LIENS ON CROP—PRIORITY.—The lien of a laborer who produced a crop is superior to that of a mortgagee who furnished the supplies necessary to raise the crop. (Page 284.)

2. MORTGAGE ON CROP—NOTICE OF LABORER'S LIEN.—One who takes a mortgage on a crop to be thereafter produced takes with notice of the liens of any laborers for labor required to produce it, and subject thereto, especially where the contract for the labor was made and the labor was commenced prior to the execution of the mortgage. (Page 285.)

3. BONA FIDE PURCHASER—WHEN MORTGAGEE HELD NOT TO BE.—A mortgagee who purchases the mortgaged property and pays for it by crediting the purchase money on the past due account secured by the mortgage is not a purchaser for value. (Page 285.)

Appeal from Clay Circuit Court, Western District.

ALLEN HUGHES, Judge.

Affirmed.

#### STATEMENT BY THE COURT.

James Mulholler rented a farm in Clay County from one McGrew for the year 1901. In February of that year he hired

Joseph Carter to assist him in making the crop, agreeing to pay him about $15 per month and board. On March 16, 1901, Mulholler executed a mortgage on the crop to be grown on the land during that year to the Sheeks-Stephens Store Company, of Corning, Arkansas, to secure them for supplies to be furnished to him during that year. This mortgage was recorded on the 6th day of May, following.

Carter worked on the crop until the latter part of June. Mulholler only paid him $1.90, and was at the time he quit owing him over $40. Mulholler delivered two loads of cotton to Sheeks-Stephens Company in September, and on the 3d of October, 1901. Before this cotton was delivered, McGrew, who had a lien on it for his rent, notified Sheeks-Stephens Store Company to hold the amount of his rent out of the cotton delivered.

Afterwards Carter brought suit before a justice of the peace to enforce his laborer's lien on the crop, and had the cotton which had not been delivered to Sheeks-Stephens Store Company attached. He procured a judgment and an order of sale. But before the cotton was sold Richardson, the constable to whom the order of sale was delivered, and Hopson, the attorney for Carter, made an agreement with the Sheeks-Stephens Store Company that the attached cotton might be delivered to Sheeks-Stephens Store Company, and sold by it, and, after paying the cost of picking and the amount due for rent, it was to pay the remainder of the proceeds to Richardson, to be applied on the judgment of Carter against Mulholler. Hopson and Richardson testified to facts tending to show that Mr. Sheeks, who represented the Store Company in making this contract, represented to them, as an inducement for them to make it, that there were only about $100 unpaid on the rent note, and they say, in substance, that they understood from him that the two loads of cotton previously delivered had been applied on the rent, and that only the balance of the rent was to be paid from the proceeds of the attached cotton.

Five more loads of cotton was delivered to the Store Company in pursuance of this agreement. The Store Company paid the rent note and costs of picking the cotton, but claimed that the proceeds of the cotton were not sufficient to pay those charges, and

refused to pay Richardson anything for Carter. Richardson brought this action before a justice of the peace to recover about $45 which he claimed had been received by the Store Company over and above the costs of the rent and picking. The evidence for the plaintiff tended to show that the proceeds of this cotton, after deducting cost of picking, was to be paid by the Store Company on the rent note of McGrew. For the defendant it tended to show that there was no such agreement, and that it was placed to the credit of Mulholler on his account due the Store Company.

The justice gave judgment in favor of plaintiff, and, on trial *de novo* in the circuit court, a judgment was rendered in favor of plaintiff for $44, from which judgment the defendant appealed.

*G. B. Oliver,* for appellant.

The laborer's lien was not prior to the mortgage. Kirby's Dig. § § 5011, 5012; 71 Ark. 337. As to all sums paid out previous to the issuing of the attachment, appellant was a *bona fide* purchaser. Cobbey, Chat. Mort. 152; 23 Am. & Eng. Enc. Law, 476; 82 S. W. 836.

*D. Hopson,* for appellees.

A laborer's lien is superior to a prior mortgage. Kirby's Dig. § § 4995, 5006; 62 Ark. 435. Appellant was not a *bona fide* purchaser. 34 Ark. 383; 82 S. W. 836; 69 Ark. 306; Sand. & H. Dig. § 4776. The judgment is right upon the whole case. 10 Ark. 9, 53.

RIDDICK, J., (after stating the facts.) This action was brought by a constable, who had attached cotton, against a mercantile firm to whom, by consent of the parties, he had delivered it for sale, to recover the proceeds of the cotton. The plaintiff in the attachment suit was a laborer who claimed a lien on the cotton. While the action is brought in the name of the constable, it is for the use and benefit of the laborer, and the action is, in effect, a contest between a laborer who claims a lien on cotton for the price of his labor in producing it and a firm of merchants who claim a lien thereon by virtue of a mortgage for supplies furnished the owner of the crop.

In the first place, we are of the opinion that the act of March 11, 1895, did not change the law, so far as such a laborer is con-

cerned. The prior act of July 23, 1868, gave laborers a lien on the production of their labor. The act of 1895 extended this law so as to give laborers who perform work on any object or thing a lien thereon for the price of their labor, whether their labor produced the thing upon which the labor is expended or not. When the work of the laborer does not produce the thing upon which he labors, he takes a lien, but it is subject to prior liens. But when the labor for which a lien is claimed produces the thing upon which a lien is claimed, then no lien can, under the statute, be prior to that. No lien upon a crop can be prior to that which the statute gives the laborer who prepares the ground, plants and produces the crop, for his lien attaches as soon as the crop comes into existence, which is as soon as any lien can attach. The lien of a mortgagee does not attach to a crop until it is produced, and therefore cannot be prior to the lien which the statute gives the laborer who produces it. The lien of the landlord for his rent is by the statute made superior to that of the laborer. But, in order to make this mortgage a superior lien to that of the laborer who produced the crop, it would, under any view of the statute, be necessary to show that it was a prior lien, which, as we have shown, cannot be done. The court, we think, properly held that the lien of this laborer was superior to that of the mortgagee who furnished the supplies to raise the crop.

Again, the facts here do not show that the defendant was a *bona fide* purchaser without notice. One who takes a mortgage on a crop to be thereafter produced must know that it requires labor to produce it, and, under the statute, laborers have liens for their work. He, therefore, takes his mortgage with notice of such liens, and subject thereto, especially when, as in this case, the contract made by the owner of the crop with the laborer, and the commencement of his labor, were prior to the execution of the mortgage.

Of course, if appellant had subsequently bought and paid for this cotton without notice of such lien, it would be protected; but it paid nothing out on the purchase of the cotton. Only two loads were delivered to it before the attachment was levied, and it admits that it credited the price of that on a past due account. This was not sufficient to make defendant a *bona fide* purchaser of the two loads. The laborer then had a lien for his wages on all the cotton

delivered to defendant, subject to the lien of the landlord for rents, and we think the evidence justified the jury in finding that, under the agreement with the plaintiff, defendant had the right to retain only that portion of the proceeds of the cotton required to pay the balance due on the rent note, and for picking, after applying the proceeds of the two loads of cotton which defendant received before the attachment. That question was submitted to the jury, and was found against defendant, and we find no error in the instructions that would justify a reversal. While these instructions are not quite so clear as they might have been, we think that those asked by defendant were, under the facts proved, erroneous and misleading, and were properly refused. On the whole case, we think the judgment should be affirmed, and is so ordered.