GARDNER *v.* FIRST NATIONAL BANK OF DEQUEEN.

Opinion delivered March 6, 1916.

1. LIENS—ARTISAN'S LIENS—HOW CREATED.—Artisan's liens are a creation of the common law and are not dependent upon statute for their existence.

2. LIENS—ARTISAN'S LIEN—MORTGAGED CHATTELS.—A., the owner of certain horses and wagons, mortgaged the same to B., B. allowing the property to remain in A.'s possession, the same being used by A. in his sawmill. A. procured certain repairs to be made on the wagon by one C., a blacksmith and wheelwright, and also procured C. to shoe the horses. *Held,* C.'s lien for labor performed was superior to the lien of B., the mortgagee.

Appeal from Sevier Circuit Court; *Jefferson T. Cowling,* Judge; reversed.

T. J. Harvill, the owner of a saw mill was indebted to A. B. Gardner a blacksmith and millwright and horseshoer in the sum of $50.85 for repair work on a wagon and shoeing horses.

Plaintiff filed an itemized account of his work done, with the circuit clerk within the time required by the statute. Then he instituted this action before a justice of the peace to enforce his lien against the property.

The First National Bank of DeQueen filed an intervention claiming the ownership of the property by virtue of a mortgage executed to it by T. J. Harvill before the work was done by the plaintiff.

The plaintiff recovered judgment before the justice of the peace and the case was appealed to the circuit court. The facts briefly stated are as follows:

T. J. Harvill owned and operated a saw mill. In connection with it he used some log wagons and some horses and mules. The First National Bank of DeQueen had a mortgage on the wagons and horses and mules but allowed Harvill to use them in the operation of his saw mill. The mortgage was duly recorded. After this the plaintiff Gardner who was a blacksmith and wheelwright made certain repairs on the wagons and shod some of the horses and mules which were engaged in pulling the wagons. The mortgagee did not know that the mortgagor had had the repair work done and did not give its specific consent to its being done.

The circuit court held that the bank had a lien prior in point of time to that of Gardner and that its lien was superior to Gardner's lien. Judgment was thereon rendered in favor of the bank and the plaintiff Gardner has appealed.

*Garrison & Steele* and *B. E. Isbell,* for appellant.

1. The lien of the blacksmith is superior. Act 324, Acts 1911; Kirby's Digest, § 5013; 62 Ark. 438; Kirby's Digest, § 4995; 75 Ark. 115; 80 *Id.* 516.

No brief filed for appellee.

HART, J. (after stating the facts). Section 1 of Act 324 of the General Acts of 1911 provides that blacksmiths, wheelwrights and horseshoers, who perform work or labor for any person, if unpaid for the same, shall have an absolute lien on the product of their labor and upon all wagons, carriages, implements and other articles repaired, or horses or other animals shod by them, for all sums of money due for such work or labor, and for any materials furnished by them and used in such product, repairs or shoeing. See General Acts of 1911, page 298.

(1) Artisan's liens are a creation of the common law and are not dependent upon statute for their existence. In the case before us, the mortgagor operated a saw mill and the personal property in the controversy in this suit which was embraced in the mortgage to the bank was used by him in the operation of the mill. He used them as a means of earning the money to pay off the mortgage debt.

(2) The mortgagee allowed the mortgagor to keep and use the property for that purpose. It was necessary that the wagons be repaired and that the horses be shod in order to be used by the mortgagor for the purpose for which they were allowed to remain in his possession. In short, the record discloses that the mortgagee allowed the mortgagor to keep the property to use in running his saw mill and it may be fairly implied that such use of the property was contemplated when the mortgage was executed. Under such circumstances necessary repairs are superior to the lien of the mortgage as the mortgagee had impliedly authorized them.

The rule is well stated in *Hammond* v. *Danielson,* 126 Mass. 294, which was a case of a lien for repairs on a hack left in the possession of the mortgagor to be used in his business. In that case Gray, C. J. said,

"A lien on personal property cannot indeed be created without authority of the owner. *Hollingsworth v. Dow*, 19 Pick. 228; *Globe Works* v. *Wright,* 106 Mass. 207. But in the present case such an authority must be implied from the facts agreed. The subject of the mortgage is a hack, that is to say, a carriage let for hire; described in the mortgage as 'now in use' at certain stables; and which, as the parties have agreed in the case stated, the mortgagor retained possession of and used agreeably to the terms of the mortgage. It was the manifest intention of the parties that the hack should continue to be driven for hire, and should be kept in a proper state of repair for that purpose, not merely for the benefit of the mortgagee, but for that of the mortgagor also, by preserving the value of the security and affording a means of earning wherewithal to pay off the mortgage debt. The case is analogous to those in which courts of common law, as well as of admiralty, have held, upon general principles, independently of any provision of statute, that liens for repairs made by mechanics upon vessels in their possession take precedence of prior mortgages." To the same effect see *Smith* v. *Stevens* (Minn.) 31 N. W. 55; *Meyer* v. *Berlandi* (Minn.) 40 N. W. 513; *Tucker* v. *Werner,* 21 N. Y. Sup. 264; *Ruppert* v. *Zang,* 73 N. J. L. 216, 62 Atl. 998; *Garr* v. *Clements* (N. D.) 62 N. W. 640; *Watts* v. *Sweeney* (Ind.) 26 N. E. 680.

There is nothing in our decisions in regard to the priority of mortgages over mechanics liens which conflicts with the rule we have here announced.

In the case of the mortgage of realty there can be no implied authority from a mortgagee that the mortgagor go on and create a lien for erecting new buildings or improving existing ones that shall take precedence of the mortgage. The buildings are attached to the soil and as soon as erected become a part of the realty. Buildings which are repaired are a part of the realty before the repairs are made. No facts exist in the nature

of the transaction from which authority on the part of the mortgagor to build or to repair houses can be implied.

The doctrine of agency implied from circumstances upon which the decision is based was recognized by this court in *Sheeks-Stephens Store Co.* v. *Richardson,* 76 Ark. 282. There the court held that the lien of the laborer who produced the crop is superior to that of the mortgagee who furnished supplies necessary to raise the crop. As part of the reason for holding as it did the court said, that one who takes a mortgage on a crop to be thereafter produced must know that it requires labor to produce it and, under the statute, laborers have liens for their work. So under the circumstances of this case it was contemplated between the parties that the mortgagor should use the property in his business and this raised by implication the right of the mortgagor to repair the property and thus render it fit for the intended use, as such action on his part was for the benefit of all concerned.

From the views we have expressed it follows that the judgment must be reversed and the cause remanded for a new trial.