KERSTEN *v.* BLACK.

5-2856                                              364 S. W. 2d 150

Opinion delivered January 14, 1963.

[Rehearing denied February 18, 1963.]

*A. James Linder* and *James M. Barker, Jr.,* for appellant.

*Williamson, Williamson & Ball,* for appellee.

Ed. F. McFaddin, Associate Justice. This is a controversy, between appellant who claims "a common law lien," and appellee who has a mortgage lien. Appellee, M. O. Black, is the father of James L. Black, who farmed lands rented from several owners. On August 28, 1960, James L. Black executed, acknowledged, and delivered to M. O. Black a mortgage to secure a note of $7,000.00 and all other advances. The mortgage was duly recorded the same day, and was on the then growing 1960 rice crop and soybean crop of James L. Black. The rights of M. O. Black under this mortgage form the basis of the present suit. The appellant, W. F. Kersten, is a feed and fertilizer merchant in Ashley County, and also a purchaser of rice and soybean crops. In 1960 James L. Black purchased rice and soybean seed and fertilizer from Kersten, apparently on open account; and at the time of the harvest season, the balance due by James L. Black to Kersten was $3,767.54. Kersten testified that James L. Black promised to pay Kersten the furnish account out of the proceeds of his 1960 crop; and such promise is an ingredient of appellant's claimed common law lien.

When James L. Black's 1960 rice crop was harvested and the rent paid, the remaining proceeds were insufficient to pay M. O. Black, and there was left a sizable balance. Then came the 1960 soybean harvest. Kersten purchased the soybean crop from James L. Black, and promptly in turn sold it to others in New Orleans and elsewhere. After Kersten paid the rent due the landowners there remained in Kersten's hands $10,-869.46 proceeds of the soybean crop. By three checks in November 1960, Kersten disbursed to James L. Black a total of $800.00. On November 29, 1960, Kersten paid the appellee, M. O. Black, $5,500.00 as a part of the proceeds of the soybean crop; and from said amount, M. O.

Black paid the Farm Home Administration $4,852.42, as the balance due on the James L. Black first mortgage, and retained the remaining $647.58 to apply on the indebtedness that James L. Black owed M. O. Black. On January 11, 1961, Kersten paid M. O. Black the further sum of $1,000.00 from the proceeds of the soybean crop. There remained in the hands of Kersten the sum of $3,569.46 as the balance of the soybean crop; and it was for the recovery of this amount that M. O. Black filed the present suit.[1] Kersten claimed and testified that James L. Black owed him a total of $3,767.54, which was $198.08 more than the $3,569.46 that Kersten held in his hands as the balance of the proceeds of the soybean crop; and Kersten claimed the right to retain the $3,569.46 by virtue of a "common law lien."

The Trial Court held that Kersten had a common law lien on the proceeds of the soybean crop, but had waived his common law lien in favor of appellee's mortgage lien. From such holding as to the waiver, Kersten brings this appeal, claiming that there was no sufficient evidence to establish a waiver. To answer Kersten's contention, the appellee claims (a) that his mortgage lien is superior to any common law lien that Kersten might claim; and (b) that if Kersten ever had any common law lien, he lost it by disposing of the soybeans, and also by recognizing the superior rights of M. O. Black's mortgage.

I. *The Lien of The Mortgage Held By M. O. Black.* The mortgage from James L. Black to M. O. Black was duly executed, acknowledged, filed for record, and recorded on August 25, 1960. Under our statutory law, M. O. Black had a lien from that date which was notice to all the world. Section 51-1002 Ark. Stats. reads:

"Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice

---

[1] James L. Black was originally made a defendant in this case; but he filed a voluntary petition in bankruptcy on April 29, 1961 and obtained his discharge in bankruptcy on June 30, 1961.

to all persons of the existence of such mortgage.''

Section 51-1004 Ark. Stats. reads:

''All mortgages executed on crops already planted, or to be planted, shall have the same force and effect to bind such crops and their products, as other mortgages now have to bind property already in being.''

Thus the lien of M. O. Black was superior to any subsequently acquired lien.

II. *The ''Common Law Lien'' of Kersten.* Appellant claims that he had a ''common law lien'' on the 1960 soybean crop of James L. Black for all that Kersten furnished to enable Black to plant, cultivate, harvest, and market the said soybean crop; that such lien arose from possession; and that when Black delivered the soybeans to Kersten the ''common law lien'' became superior to the mortgage lien of M. O. Black, regardless of the fact that M. O. Black's mortgage was of record prior to the delivery of the soybeans to Kersten.[2] In *Driver* v. *Jenkins,* 30 Ark. 120 (1875), Mr. Justice Walker said of a common law lien: ''The lien rests upon the idea, that the party having it has a right in, or to, the property until his claim has been paid or satisfied by the owner of the property.''[3] But when Kersten received possession of the soybeans (as purchaser and subsequently to be noted), even then there was of record the mortgage of M. O. Black, and Kersten's claim was subject to the

---

[2] Learned counsel for appellants succinctly states Kersten's contention as to the "common law lien"; ". . . we feel it imperative to determine the nature of the right of lien. The authorities are almost unanimous in holding that the right of lien is not property right, neither a *jus ad rem,* nor a *jus ad re.* It is a personal prerogative or power that attaches to a person called a lienholder, which he may or may not exercise in order to retain possession of goods of his debtor until certain charges are met. *Driver* v. *Jenkins,* 30 Ark. 120; *Burrow* v. *Fowler,* 68 Ark. 178; *Ruggles* v. *Walker,* 34 Vt. 468; *McCombie* v. *Davis* (K.B. 1805), 7 East 5, 103 Eng. Reprint 3; Brown On Personal Property, Sec. 120 at Page 533. The right of a lien does not arrive until lienor accomplishes possession of the subject matter of the lien, and when this is accomplished, the duration of the lien is measured by the duration of the possession. *Burnett* v. *Mason,* 7 Ark. 253; *Driver* v. *Jenkins, supra; Burrow* v. *Fowler, supra; Weber Implement and Auto Company* v. *Pearson,* 132 Ark. 101. Thus, the authorities show that the lien at common law is founded upon the conception of possession and is highly personal in its nature."

[3] For similar definitions of a common law lien see 33 Am. Jur. 425, "Liens" § 16; 37 C.J. 307, "Liens" § 3; 58 C.J.S. 836, "Liens" § 3; and Jones on Liens, 3rd Ed. § 3.

paramount right of that mortgage: so Kersten's right, if any, could not become superior to the mortgage held by M. O. Black.

There are also other answers to the appellant's claim. Under any concept of the "common law lien," it arose only when possession was obtained, and existed only so long as possession was retained.[4] Kersten did not take possession as a lien claimant, but as a *purchaser* of the soybeans. He promptly sold the soybeans and parted with possession, and thereby lost whatever common law lien he might ever have enjoyed. There is also the matter of the recognition of M. O. Black's superior rights, on which point the Chancellor rested his opinion; and we find that ground to be sound. The evidence established that when Kersten paid M. O. Black the $1,000.00 in January 1961, Kersten promised to pay M. O. Black the balance of the proceeds of the soybean crop. This promise was clearly a recognition of the superior right of M. O. Black to the proceeds of the soybean crop.

A treatise of considerable length could be written on this matter of common law liens and how far they have been affected by statutory liens;[5] but we summarize from our own holdings. In *Bennett* v. *Taylor,* 185 Ark. 794, 49 S. W. 2d 608, after reviewing our earlier cases, we said: "Indeed, we are of the opinion that the only common-law lien that has been recognized by the statutes or courts of this state is that which was recognized at common-law as artisans' lien by which a chattel which had been improved or repaired was impressed

---

[4] See 33 Am. Jur. 434, "Liens" § 29; 37 C.J. 325 and 330, "Liens" § 33 and § 46; and 53 C. J. S. 853 and 859, "Liens" § 8 and § 12.

[5] In addition to the articles on liens in American Jurisprudence, *Corpus Juris,* and *Corpus Juris Secundum,* previously mentioned, there is also the volume, "Jones on Liens." Some of our own cases not previously mentioned are worthy of study: *Barnett* v. *Mason,* 7 Ark. 253; *Roberts* v. *Jacks,* 31 Ark. 597; and *Burrow* v. *Fowler,* 68 Ark. 178, 56 S. W. 1061. Also we mention the following: 37 Mich. Law Review, p. 283: "Extent to which common-law artisan's lien has been supplanted by statute"; note in 50 L.R.A. 719, "Liens depending on possession"; *Sweet* v. *Pym,* 16 Eng. Rul. Cases 142, and the English and American notes following the case. In Case and Comment for November-December 1957 (Vol. 62, No. 6), page 34, there is a most interesting article entitled, "Joseph Story's Unsigned Article on 'Common Law Liens,'" written by John Charles Hogan.

with a lien in favor of the workman so long as it remained in his possession. *Gardner* v. *First National Bank,* 122 Ark. 464, 184 S. W. 51.''

We conclude that the decree in favor of M. O. Black was correct; and it is affirmed.

HOLT, J., not participating.