restraint of an incorrigible juvenile, is not exclusive, but article 1197, as amended by Acts 35th Leg. (4th Called Sess.) c. 26 and article 1195, also designate procedure which the courts may follow.

Original application by Otis Davis for a writ of habeas corpus. Application dismissed.

W. M. Atkinson, of Gonzales, for appellant.

E. A. Berry, Asst. Atty. Gen., for the State.

MORROW, J. This is an original application for a writ of habeas corpus. It appears that relator is held under a judgment of the county judge of Gonzales county sitting as a juvenile court. The judgment recites that the relator was charged by complaint and information with being a delinquent child, in that he had stolen a certain sum of money; that the parties appeared; that the relator was under 17 years of age, and that he is therein condemned to the state juvenile training school for a period of one year.

The relator could have appealed from the judgment. This has been expressly declared by statute. Acts 35th Leg. Fourth Called Session, c. 26. It had been so previously held under the construction of the former law. Ex parte Pruitt, 200 S. W. 392.

[1] The authority for holding the relator being under a judgment which, on its face, is regular and against which no direct attack is made, there would be available in the collateral proceeding of a habeas corpus under the record only the question of the jurisdiction of the court to enter the judgment. There is a statute (article 1198, C. C. P.) declaring that the county and district courts of the several counties of the state shall have jurisdiction in all cases coming within the terms and provisions of this law, and that in all trials coming under the act any person interested therein may demand a jury. The finding of the court shall be entered in a book known as the juvenile record, and the court, when disposing of cases under this law, may, for convenience, be called the juvenile court.

In section 1 of article 5 of the Constitution, the following is found:

"The Legislature may establish such other courts as it may deem necessary, and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."

[2, 3] Various acts of the Legislature establishing courts and conferring jurisdiction have been construed in cases which are cited in Harris' Texas Constitution, p. 356. Without discussing them in detail, suffice it to say that in our opinion there is nothing in the Constitution which would inhibit the Legislature from conferring upon the county court the power to render the judgment which appears in the record in this case. The court having jurisdiction to render the judgment, and the law affording a remedy by appeal, we are not, in a habeas corpus proceeding, in a position to inquire into questions of procedure in the trial, or the sufficiency of the evidence upon which the judgment was rendered. The juvenile law in several of its phases has been held valid. See McLaren v. State, 199 S. W. 811; Ex parte Pruitt, 200 S. W. 392; Ex parte McLoud, 200 S. W. 394; Miller v. State, 200 S. W. 389.

[4] Article 1206, C. C. P., to which the relator refers, and in which a procedure is designated by which the parent may cause the restraint of an incorrigible juvenile, has not, so far as we are aware, been construed. Without further passing upon its effect, we would state in our opinion, it is not exclusive, but, on the contrary, article 1197, as amended by the Thirty-Fifth Legislature, and article 1195 designate procedure which the courts may follow.

The application for writ of habeas corpus is dismissed.

---

B. M. BURGHER & CO. et al. v. BARRY et al. (No. 2108.)

(Court of Civil Appeals of Texas. Texarkana. April 10, 1919. Rehearing Denied April 17, 1919.)

CHATTEL MORTGAGES ⚬⟲138(3)—LANDLORD'S LIEN—PRIORITY.

Where a tenant purchased a soda fountain and executed a chattel mortgage thereon, and, being unable to pay for it, redelivered it to the vendor, who then made a sale to another person, who executed to the vendor a chattel mortgage on the fountain, leaving it in the store of the landlord, and at a later date the tenant moved from the premises, the purchaser of the fountain then becoming the tenant, and the mortgagee having paid rent to the landlord up to such date, the mortgage lien was prior to any lien of the landlord on account of subsequent rent.

Error from District Court, Kaufman County; Joel A. Bond, Judge.

Action by B. M. Burgher & Co. and others against O. E. Barry and others. From part of the judgment in favor of one of the defendants on a cross-action, the plaintiffs bring error. Reversed and rendered.

The plaintiffs in error sued Joseph Shahada and C. C. Fox on certain notes and to foreclose a chattel mortgage on a soda fountain and appliances. The defendant in error Childress, made a party to the suit, by cross-

action sought to have the landlord's lien foreclosed on the same property to pay $180 rent alleged to be due and unpaid. The case was tried before the court without a jury. The appeal is only from that part of the judgment in favor of defendant in error Childress for $180, which is based on the cross-action.

The court made findings of fact which are sustained, we conclude, by the evidence. It was proven that the defendant in error Childress, owner of a storehouse, rented it for one year from May 12, 1914, to F. L. Davis; but later, by agreement of the parties, C. C. Fox was substituted as the sole lessee. On July 16, 1914, C. C. Fox purchased from Grossman Company a soda fountain and appliances, and he executed a chattel mortgage on said property to secure payment of the purchase price of the same. On October 16, 1914, C. C. Fox, being unable to pay for the property, redelivered it to the Grossman Company, who then on that date made a sale of the same to Joseph Shahada. On the same day he bought this property Joseph Shahada executed a chattel mortgage on the soda fountain and appliances to the Grossman Company to secure the payment of the purchase money. The soda fountain was left in the storehouse of defendant in error by Joseph Shahada after his purchase from Fox. On December 3, 1914, the Grossman Company paid to defendant in error Childress the full amount of rent due by C. C. Fox to date, and from that date Fox ceased to be a tenant of defendant in error Childress. Defendant in error Childress, after the payment of the full amount of rent due by Fox, and on December 3, 1914, rented the storehouse. to Joseph Shahada, who entered into possession at once and became the only tenant of defendant in error Childress. On June 15, 1915, Joseph Shahada was in arrears and owed to defendant in error Childress a balance of $260 as rent due for 4½ months.

Lee R. Stroud, of Kaufman, and Wood & Wood, of Dallas, for plaintiffs in error.

Terry & Brown, of Kaufman, for defendants in error.

LEVY, J. (after stating the facts as above). The only question for decision on appeal is as to the priority of liens. According to the findings of fact, Grossman Company had a chattel mortgage lien on the property which was executed by Joseph Shahada on October 16, 1914; and the rental contract between defendant in error Childress and Joseph Shahada originated and began on December 3, 1914. At the time of the rental contract of December 3, 1914, the defendant in error Childress had been paid in full all rent due him to that date. In these facts it is believed that the chattel mortgage lien is su-

perior to and has priority over any lien in this case of the landlord Childress. Brackenridge v. Millan, 81 Tex. 17, 16 S. W. 555.

The judgment on the cross-action is reversed, and judgment is here entered in favor of the plaintiffs in error, with all costs.